IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

LILIANA RODRIGUEZ CANET,

     Plaintiff,

     v.                                    CIVIL NO. 04-1986 (RLA)

MORGAN STANLEY & CO., et al.,

     Defendants.

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DISMISSING THE COMPLAINT AS TIME-BARRED

Codefendant MORGAN STANLEY DW INC. ("MORGAN STANLEY") has moved the court to dismiss the instant complaint as untimely filed. In the alternative, movant petitions the court to refer this matter to arbitration. The court having reviewed the memoranda filed by the parties hereby finds that the claims asserted are time-barred.

The complaint asserts violations to various securities provisions including sec. 10(b) of the Securities Exchange Act of 1934,[1] 15 U.S.C. § 78j(b) and Rule 10b-5 of the Securities and Exchange Commission, 17 C.F.R. § 240.10b-5. According to the complaint, defendants purportedly violated securities laws by purchasing unsuitable securities in disregard of her interests and lack of investment sophistication.

---

[1] Violations to secs. 15(c)(1)-(2) and 20 of this statute, 15 U.S.C. §§ 78o(c)(1) and 78t respectively are also claimed. Additionally, the complaint cites sec. 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a).

CIVIL NO. 04-1986 (RLA)                                          **Page 2**

---

## THE FACTS

The following facts are deemed true for purposes of this Order.

1.   On February 24, 1987 plaintiff, LILIANA RODRIGUEZ CANET and her mother, MERCEDES C. RODRIGUEZ, opened a joint account with MORGAN STANLEY.

2.   Codefendant RAUL A. BENAVIDES was the financial advisor at MORGAN STANLEY assigned to handle the aforementioned account.

3.   On September 24, 1999 a Variable Annuity was purchased in plaintiff's account.[2]

4.   As reflected in the monthly account statements issued at the end of each month, commencing on December 2000 through August 2001 plaintiff's account decreased close to 40% of its initial value as follows:[3]

| Date  | Value      |
|-------|------------|
| 12/00 | $99,521.65 |
| 1/01  | 93,040.15  |
| 2/01  | 83,132.43  |
| 3/01  | 76,355,35  |
| 4/01  | 78,804.45  |
| 5/01  | 77,088.03  |

---

[2]  Plaintiff denies having authorized this purchase.

[3]  Plaintiff claims she did not receive the account monthly statements.

| | |
|---|---|
| 6/01 | 74,336.13 |
| 7/01 | 70,061.19 |
| 8/01 | 65,330.17 |
| 9/01 | 61,549.25 |

5.   The complaint in this action was filed on September 22, 2004.

6.   At the time the aforementioned account was opened, plaintiff executed an Agreement which, in relevant part, reads as follows:

> I agree and you agree by carrying any
> account in which I have an interest
> that all controversies between me and
> you or your agents, representatives or
> employees arising out of or concerning
> any such account, any transactions
> between us or for such accounts, or
> the construction, performance or
> breach of this or any other agreement
> between us, whether entered into
> prior, or subsequent to the date below
> shall be determined by arbitration in
> accordance with the rules of the
> National Association of Securities

Dealers, Inc. or the New York Stock

Exchange, Inc. as I may elect.

### SUMMARY JUDGMENT

Rule 56(c) Fed. R. Civ. P., which sets forth the standard for ruling on summary judgment motions, in pertinent part provides that they shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Sands v. Ridefilm Corp., 212 F.3d 657, 660-61 (1st Cir. 2000); Barreto-Rivera v. Medina-Vargas, 168 F.3d 42, 45 (1st Cir. 1999). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997). A genuine issue exists if there is sufficient evidence supporting the claimed factual disputes to require a trial. Morris v. Gov't Dev. Bank of Puerto Rico, 27 F.3d 746, 748 (1st Cir. 1994); LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993), cert. denied, 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994). A fact is material if it might affect the outcome of a lawsuit under the governing law. Morrissey v. Boston Five Cents Sav. Bank, 54 F. 3d 27, 31 (1st Cir. 1995).

"In ruling on a motion for summary judgment, the court must view 'the facts in the light most favorable to the non-moving party,

CIVIL NO. 04-1986 (RLA)                                              Page 5

drawing all reasonable inferences in that party's favor.'" Poulis-Minott v. Smith, 388 F.3d 354, 361 (1st Cir. 2004) (citing Barbour v. Dynamics Research Corp., 63 F.3d 32, 36 (1st Cir.1995)).

Credibility issues fall outside the scope of summary judgment. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). *See also*, Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 432 (1st Cir. 2000) ("court should not engage in credibility assessments."); Simas v. First Citizens' Fed. Credit Union, 170 F.3d 37, 49 (1st Cir. 1999) ("credibility determinations are for the factfinder at trial, not for the court at summary judgment."); Perez-Trujillo v. Volvo Car Corp., 137 F.3d 50, 54 (1st Cir. 1998) (credibility issues not proper on summary judgment); Molina Quintero v. Caribe G.E. Power Breakers, Inc., 234 F.Supp.2d 108, 113 (D.P.R. 2002). "There is no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, and no room for the judge to superimpose his own ideas of probability and likelihood. In fact, only if the record, viewed in this manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." Cruz-Baez v.

Negron-Irizarry, 360 F.Supp.2d 326, 332 (D.P.R. 2005) (internal citations, brackets and quotation marks omitted).

In cases where the non-movant party bears the ultimate burden of proof, he must present definite and competent evidence to rebut a motion for summary judgment, Anderson v. Liberty Lobby, Inc., 477 U.S. at 256-257, 106 S.Ct. 2505, 91 L.Ed.2d 202; Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2000); Grant's Dairy v. Comm'r of Maine Dep't of Agric., 232 F.3d 8, 14 (1st Cir. 2000), and cannot rely upon "conclusory allegations, improbable inferences, and unsupported speculation". Lopez-Carrasquillo v. Rubianes, 230 F.3d 409, 412 (1st Cir. 2000); Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994); Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

## TIMELINESS

In essence, plaintiff asserts two different claims under sec. 10(b): one for the alleged unsuitability of the investments and the other for the alleged unauthorized purchase of investments.

In 1991 the U.S. Supreme Court ruled that claims asserted under sec. 10(b) "must be commenced within one year after the discovery of the facts constituting the violation and within three years after such violation." Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 364, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991). *See also*, Young v. Lepone, 305 F.3d 1, 8 (1st Cir. 2002).

Further, if fraudulent concealment is present, the one-year limitations period will accrue "when the plaintiff in the exercise of reasonable diligence discovered or should have discovered the fraud of which he complains." *Id.* (citing <u>Cooperativa de Ahorro y Credito Aguada v. Kidder, Peabody & Co.</u>, 129 F.3d 222, 224 (1st Cir. 1997)). "When telltale warning signs augur that fraud is afoot, however, such signs, if sufficiently portentous, may as a matter of law be deemed to alert a reasonable investor to the possibility of fraudulent conduct." *Id.*

In making this assessment the court must initially determine whether sufficient signs were present to alert a reasonable investor of the possibility of fraud. If so, it must then ascertain whether plaintiff's response thereto was diligent under the circumstances. "The first step in the pavane requires a reviewing court to ascertain whether, when, and to what extent, storm warnings actually existed in a given situation... [which] would lead a reasonable investor to check carefully into the possibility of fraud... The next step requires the court to assay whether, once sufficient storm warnings were apparent, the investor probed the matter in a reasonably diligent manner." *Id.*

The longer period, i.e., 3 years, however, is fatal and is not subject to extensions. "Because the purpose of the 3-year limitation is clearly to serve as a cutoff, we hold that tolling principles do not apply to that period." <u>Lampf</u>, 501 U.S. at 363.

In 2002 Congress enacted the Sarbanes-Oxley Act,[4] 28 U.S.C. § 1658(b), adopted in response to corporate scandals which, *inter alios*, extended the one-and three-year limitations provided for in Lampf to a two and five-year term for claims based on securities fraud. The Sarbanes-Oxley Act has been found applicable to private claims arising in fraud under sec. 10(b). In re: Alstom SA Sec. Lit., 406 F.Supp.2d 402 (S.D.N.Y. 2005); In re: Exxon Mobil Oil Corp. Sec. Lit., 387 F.Supp.2d 407 (D.N.J. 2005).

The statute, in pertinent part, reads:

    (b) [A] private right of action that involves a claim

    of fraud, deceit, manipulation, or contrivance in

    contravention of a regulatory requirement concerning the

    securities laws as defined in section 3(a)(47) of the

    Securities Exchange Act of 1934 (15 U.S.C. § 78c(a)(47) may

    be brought no later than the earlier of-

        (1) 2 years after the discovery of the facts

        constituting the violation; or

        (2) 5 years after such violation.

The extended limitations period went into effect on July 30, 2002. The statute further provided that it would "apply to all proceedings... that... commenced on or after the date of [its]

_____

    [4]  Formally known as the Public Company Accounting and Investor Protection Act of 2002.

**CIVIL NO. 04-1986 (RLA)**                                    **Page 9**

enactment [**July 30, 2002**]". Pub.L. 107-204, Title VII, § 804(b), July 30, 2002 (note following § 1658).

The longer period benefits claims accrued prior to July 30, 2002 but not yet extinguished as of that date. That is, the extended period does not revive claims for which the one-and three-year limit had already expired at the time the statute went into effect. It does not "resurrect[] moribund securities claims." Lieberman v. Cambridge Partners, L.L.C., 432 F.3d 482, 487 (3rd Cir. 2005). *See also*, In re: ADC Telecomm., Inc. Sec. Lit., 409 F.3d 974 (8th Cir. 2005) ("Sarbanes-Oxley Act does not apply retroactively to revive claims on which the prior statute of limitations had run"); In re: Alstom SA Sec. Lit., 406 F.Supp.2d at 422 (claims barred prior to July 30, 2002 "will not be revived by looking to the lengthened limitations period stated in [§ 1658(b)]."); In re: Exxon Mobil Oil Corp. Sec. Lit., 387 F.Supp.2d at 416 (Act not to be applied retroactively "and does not revive claims that were time-barred prior to its enactment.")

Hence, we must first determine the status of plaintiff's claims at the time the amendment went into effect.

Defendant initially contends that the claim based on the purchase of the Variable Annuity is stale under the three-year statute of repose. The Variable Annuity with enhanced death benefits was purchased on **September 24, 1999** and the complaint filed on **September 22, 2004.**

Additionally, MORGAN STANLEY argues that by **August 2001** the steady and drastic reduction in plaintiff's investment portfolio constituted sufficient "storm warnings" to trigger her duty of "diligent inquiry". Hence, the complaint filed over three years thereafter was untimely for both the Variable Annuity as well as the allegation that the transactions in her account were unsuitable.

Plaintiff's response to defendant's argument is simple. She never received the monthly statements. Thus, plaintiff claims that she was not alerted to the purportedly fraudulent scheme in order to trigger her duty to further inquire into the matter. Plaintiff also alleges that she first received copy of the Variable Annuity document in October 2003 when, upon her request, MORGAN STANLEY provided one.

We shall begin by addressing plaintiff's argument based on the statute of repose. Taking **September 24, 1999** - the date when the Variable Annuity was purchased - as the accrual date for the initial three-year statute of repose, plaintiff's claim would have expired in **September 2002.** That means that on **July 30, 2002,** when the Sarbanes-Oxley Act went into effect this particular cause of action was still alive by scarcely two months and, under the new 5-year statute of repose timely filed in September 2004 by a matter of days.

Similarly, we must examine whether the claims asserted are timely under the previous one-year limitation. According to defendant plaintiff was put on inquiry notice regarding the unsuitable investments at least by **August 2001** which would have required that

CIVIL NO. 04-1986 (RLA)                                          **Page 11**

---

the pertinent complaint be filed within a year therefrom, i.e., by **August 2002**. Hence, this claim had not yet expired when the new limitations period went into effect in **July 2002**.

**ACCRUAL**

At this stage we are called upon to decide whether, based on the facts before us, plaintiff was indeed put on inquiry notice for both of her claims - whether based on the purchase of an Variable Annuity insurance in September 1999 as well as the mishandling of the invested funds - at least two years prior to filing the complaint in September 22, 2004.

We shall initially address plaintiff's contention that she never received the monthly account statements issued by MORGAN STANLEY. This is not to say that plaintiff did not have access to them or opportunity to review them. Further, there is no allegation that the statements were received at an address different from the one provided by plaintiff and her mother when filling out their initial account application or that she requested that an additional copy of the statements be mailed directly to her and that these were not provided. In effect, plaintiff is saying that she failed to examine the status of her account during the more than 15 years that she held it. It is elementary that any reasonable investor would take steps to periodically ascertain the status of his/her account. Plaintiff cannot merely sit back and hope for the best; she had at a minimum, a duty to keep abreast of how her investments were performing.

According to the complaint, the purpose of the account was for plaintiff to seek a "stable source of income, thus the account was to be managed in a conservative manner." ¶ 16. Hence, any reasonable investor in plaintiff's position would have reacted when faced with the steady and significant decline of her investment for a period of close to a year when the account value dipped close to 40% of the initial invested sums. *See i.e.*, Munjak v. Signator Investors, Inc., 316 F.Supp.2d 1086, 1092 (D.Kan.2004)("[I]t does not require sophisticated knowledge to discern that the money was invested in different mutual funds than promised; that the money was invested eight months faster than as promised; and, that the rate of return was markedly different than promised"); Freundt-Alberti v. Merrill, Lynch, Pierce, Fenner & Smith, Inc., 135 F.Supp.2d 1298 (S.D.Fla. 2001) (Account statement indicating investment in stocks as opposed to bonds as per instructions, failure to send account statements to postal address and concern over lack of increase in account's value constitute ample "storm warnings" to trigger duty to investigate.)

In this regard we agree with defendant that at least by **August 2001** there were enough "storm warnings" to trigger plaintiff's duty of "diligent inquiry". However, it is not until **September 2004**, that is, over three years later, that this suit was filed.

With respect to the purchase of the $16,000.00 Variable Annuity, the transaction was first notified in the September 30, 1999 monthly account statement. This particular investment appears as a separate

category from plaintiff's other assets and is clearly itemized as "Annuities/Insurance" in every single statement issued in plaintiff's account commencing in September 1999. Thus, any reasonable investor would have been prompted to inquire as to the nature of its purchase by a mere reading of this item. Further, the Variable Annuity was losing its value along with the other assets appearing in the monthly account statements. Hence, apart from the clear notice of the purchase of an annuity insurance on a monthly basis commencing in August 1999 plaintiff was also alerted as to its deficient performance by fall 2001.

Based on the foregoing, we find that at least by **August 2001** there were sufficient facts available in the monthly statements to alert a reasonable individual to a possible wrongdoing and trigger the corresponding duty to investigate. There was clear notice of the purchase of an insurance which, according to plaintiff, served no useful purpose to the account holders as well as of significant negative returns of the investments. The depleted condition of the account was patently irreconcilable with plaintiff's instructions for conservative management and for it to generate a "stable source of income."

Simply put, the "storm warnings" were there but plaintiff failed to look in that direction. Thus, we find that this action filed three years after these events is untimely.

CIVIL NO. 04-1986 (RLA)                                    Page 14

---

### CONCLUSION

Based on the foregoing, the Motion for Summary Judgment filed by MORGAN STANLEY (docket No. **10**)[5] is **GRANTED** and the complaint is hereby **DISMISSED AS TIME-BARRED**.[6]

Judgment shall be entered accordingly.[7]

IT IS SO ORDERED.

San Juan, Puerto Rico, this 27th day of February, 2006.


                                    S/Raymond L. Acosta
                                  RAYMOND L. ACOSTA
                                  United States District Judge

---

[5]   See also, Plaintiff's Opposition (docket No. **18**); MORGAN STANLEY's Reply (docket No. **21**) and Plaintiff's Surreply (docket No. **24**).

[6]   The Motion to Join filed by codefendant RAUL BENAVIDES (docket No. **14**) is **GRANTED.**

[7]   In the alternative, defendant moved the court to order the parties to proceed to arbitration which plaintiff has failed to oppose. Pursuant to the clear terms of their Agreement it is evident that the parties to this action consented to arbitrate the issues presented in this litigation. <u>Municipality of San Juan v. Corporacion para el Fomento Economico de la Ciudad Capital</u>, 415 F.3d 145, 149 (1st Cir. 2005). Thus, the court would have so ruled had the claims survived the limitations defense.